UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No. 24-cr-161 (ECT/DJF) |
| v. | **REPORT AND** |
| Billy Ismael Hawkins, | **RECOMMENDATION** |
| Defendant. | |

---

This matter is before the Court on Defendant Billy Ismael Hawkins' Motion to Dismiss. (ECF No. 22.) Mr. Hawkins argues the Indictment (ECF No. 1) should be dismissed under the Fifth Amendment to the United States Constitution because: (1) the charges violate the Double Jeopardy Clause; and (2) the charges constitute selective prosecution on the basis of race in violation of the Due Process Clause. (*See* ECF No. 29.) Because the Double Jeopardy Clause is inapplicable to the Government's successive prosecution of Mr. Hawkins, and because Mr. Hawkins has failed to make a prima facie showing of race-based selective prosecution, the Court recommends the motion be denied.

## I.     Background

On February 9, 2024, Mr. Hawkins was charged in Hennepin County with one count of possessing a firearm as an ineligible person and three counts of assault with a dangerous weapon. *State v. Hawkins*, 27-CR-24-3193. He subsequently pleaded guilty to one count of assault with a dangerous weapon. *Id.* Three months later, the Government filed a federal Indictment charging Mr. Hawkins with one count of being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 924(g)(1), 924(a)(8). (ECF No. 1.) According to the Indictment, at the time of the offense, "[Mr. Hawkins] was a member and associate of a criminal organization, namely, the South Minneapolis

street gang known as the '10's' (often stylized as '10z').″ *Id.*

## II.     Double Jeopardy

### A.     Legal Standard

The Double Jeopardy Clause states that no "person shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "[A]t its core, the Clause means that those acquitted or convicted of a particular 'offence' cannot be tried a second time for the same 'offence.'" *Gamble v. United States*, 587 U.S. 678, 681 (2019). "Offence" does not refer to the conduct of a particular criminal defendant; rather, it refers to the violation of a particular sovereign's law. *Id.* at 683. Therefore, when there are two sovereigns that proscribe the same conduct, there are two "offences" that may be committed. *Id.*

The "dual sovereignty doctrine" flows from this understanding of the Double Jeopardy Clause. *Id.* at 683-84. This doctrine holds that "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute." *Id.* at 681. The reverse is also true. *Id.* The dual sovereignty doctrine is well-established in Fifth Amendment jurisprudence and not subject to reasonable debate. *See United States v. Lanza*, 260 U.S. 377, 382 (1922); *Abbate v. United States*, 359 U.S. 187, 194-95 (1959); *Gamble v. United States*, 587 U.S. 678, 688 (2019); *United States v. Stroud*, 673 F.3d 854, 860 (8th Cir. 2012). Thus, if a state convicts a person of a crime and the federal government subsequently charges that person for crimes related to the conduct underlying the state conviction, no Double Jeopardy violation arises.[1]

---

[1] An exception to this rule arises when there is a sham prosecution (i.e., one sovereign using another sovereign as a tool to prosecute an individual). *See generally* 21 Am. Jur. 2d *Criminal Law* § 316 (2024). Because Mr. Hawkins does not allege a sham, the Court does not consider this issue.

### B. Analysis

Mr. Hawkins' double jeopardy claim is unsupported by Fifth Amendment jurisprudence. Mr. Hawkins pleaded guilty in state court to one count of assault with a dangerous weapon. *State v. Hawkins*, 27-CR-24-3193. Other counts, including one count of possessing a firearm as an ineligible person, were dismissed. *Id.* The Government now charges him with possessing a firearm as a felon. (ECF No. 1.) Mr. Hawkins argues the Government's successive prosecution violates the Double Jeopardy Clause because "[t]he conduct underlying the charge in the Indictment is the same conduct underlying Mr. Hawkins' state conviction." (ECF No. 29 at 3.) There is no dispute that the underlying conduct is the same, but the Double Jeopardy Clause does not attach to conduct; it attaches to "offences." *Gamble,* 587 U.S. at 683. Under the well-established dual sovereignty doctrine, a state "offence" is distinct from a federal "offence." *See Stroud*, 673 F.3d at 860 (8th Cir. 2012). Thus, the fact that Mr. Hawkins' federal prosecution arose from the conduct underlying his prosecution in state court does not violate the Double Jeopardy Clause. *Id.* Mr. Hawkins proffers no other basis for his claim that double jeopardy applies. The Court therefore recommends that Mr. Hawkins' Double Jeopardy claim be denied.

## III. Selective Prosecution

### A. Legal Standard

The Executive Branch of the United States retains "broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). This power is limited by constitutional constraints, however, such as the equal protection component of the Due Process Clause of the Fifth Amendment. *Id.* In relevant part, this clause prohibits the Government from making prosecutorial decisions based on "an unjustifiable standard such as race." *Oyler v. Boles*,

---

(*See generally* ECF No. 29 at 1-4.)

368 U.S. 448, 456 (1962).

To successfully bring a claim of unlawful selective prosecution, a claimant first must make a prima facie case of discrimination. Courts utilize a two-prong test to determine whether a claimant has met this burden: (1) he must demonstrate that "others similarly situated to him were not prosecuted" (i.e., the discriminatory effect prong); and (2) he must show that "the decision to enforce the law against him was motivated by discriminatory purpose" (i.e., the discriminatory motive prong). *United States v. Perry*, 152 F.3d 900, 903 (8th Cir. 1998). Because the Government has wide latitude in making prosecutorial decisions, a claimant must provide "clear evidence" of impermissible discrimination. *United States v. Armstrong*, 512 U.S. 456, 464 (1996); *see also United States v. Parham*, 16 F.3d 844, 846 (8th Cir. 1994). The mere fact that a person is a member of a protected class whose members are convicted of particular crimes more regularly than persons outside that class is not enough to satisfy the discriminatory effect prong. *See Armstrong*, 517 U.S. at 469-70 (rejecting presumption that merely being member of a race that is statistically more likely to be convicted of a particular offense is sufficient evidence of selective prosecution); *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996) (rejecting discrimination claim based on evidence that police only arrested Black people of a particular offense during a certain month). Rather, a claimant must provide "some evidence of racially disproportionate [enforcement] compared to the actual incidence of violations by race." *Id.* (quoting *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995)); *see also Armstrong*, 517 U.S. at 470 (finding claimant's quantitative evidence of discrimination lacking because it "failed to identify individuals who were not black and could have been prosecuted for the offenses for which [claimants] were charged, but were not so prosecuted").

**B.     Analysis**

Mr. Hawkins argues the Government is selectively subjecting him to successive prosecutions

because of his race.  He contends the Government is treating him differently than other, similarly situated individuals, because it could have, but did not, bring successive felon in possession ("FIP") charges against all those convicted of Minnesota FIP offenses.  (ECF No. 29 at 7.)  In support of this contention, he cites conviction statistics from the Minnesota and United States Sentencing Commissions, which show that: (1) the State of Minnesota convicts far more people of FIP offenses annually than the United States does; and (2) over half of all persons convicted of FIP offenses, whether in federal or state court, identify as Black—which is disproportionate relative to the percentage of Minnesota residents who identify as Black.  (*See* ECF No. 29 at 7; ECF No. 30; ECF No. 31.)

        **1.**      **Discriminatory Effect**

The discriminatory effect prong of the prima facie test for race-based selective prosecution requires the claimant to show that "others similarly situated to him were not prosecuted." *Perry*, 152 F.3d at 903.  Mr. Hawkins' proffered evidence does not suggest that the U.S. Attorney's Office has targeted Black persons with successive prosecutions while declining to successively prosecute similarly situated non-Black persons.  Rather, it proves that Black persons with FIP convictions in Minnesota courts generally have *not* been successively prosecuted in federal court.  Otherwise, the number of FIP prosecutions in federal court would be higher.  Mr. Hawkins has produced no statistics on the number of non-Black persons convicted in Minnesota courts who are successively prosecuted in federal court as compared to the number of similarly situated Black persons.

Nor do Mr. Hawkins' statistics show that the U.S. Attorney's Office is subjecting *similarly situated* Black persons to a disproportionate number of FIP prosecutions overall.  Here, the proper scope of inquiry is not all those charged with FIP offenses; rather, it is all those charged with FIP offenses who were members of violent street gangs.  *See United States v. Lazzaro*, No. 21-CR-173,

2022 WL 16948157, at *2-3 (D. Minn. Nov. 15, 2022) (stating that discriminatory effect prong requires defendant to show that he was treated differently than other individuals "who committed roughly the same crime under roughly the same circumstances"); *see also United States v. White*, 928 F.3d 734, 743-44 (8th Cir. 2019) (concluding defendant had not satisfied first element of selective-prosecution claim when he had "not shown, or even alleged, that a resident of a state that has legalized marijuana would not be prosecuted for cultivating it in the same manner that [the defendant] cultivated it [in a state that had not legalized marijuana]"). Mr. Hawkins provides no evidence suggesting the U.S. Attorney's Office has refrained from prosecuting non-Black members of violent street gangs for FIP offenses. His evidence simply shows that those convicted of both state and federal FIP offenses tend to be Black. This is not enough. *See Armstrong*, 517 U.S. at 470; *Bell*, 86 F.3d at 823. Mr. Hawkins has therefore failed to satisfy the discriminatory effect prong of the selective prosecution test.

### 2. Discriminatory Motive

Mr. Hawkins has further failed to proffer evidence showing his race in any way motivated the Government's decision to prosecute him. *See Perry*, 152 F.3d at 903. Mr. Hawkins describes his successive prosecution as "inexplicabl[e]," thus demonstrating that "[t]he only logical conclusion is that the federal government singled him out … based on his race." (ECF No. 29 at 6.) But such conclusory statements are not evidence of discriminatory motive. *See United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). And Mr. Hawkins himself suggests an alternative motive (*see* ECF No. 29 at 3), arguing the Government is "aggrieved by the length of Mr. Hawkins' state sentence". Moreover, the Government proffers, and the Indictment identifies, a permissible basis for the decision to prosecute Mr. Hawkins: his membership in a violent street gang. (ECF No. 32 at 4; ECF No. 1.) Mr. Hawkins' claim that the prosecution is racially motivated amounts to nothing more than

sheer speculation. His selective prosecution claim should be denied accordingly.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Billy Ismael Hawkins' Motion to Dismiss (ECF No. 22) be **DENIED.**

Dated: October 7, 2024                    *s/ Dulce J. Foster*
                                          DULCE J. FOSTER
                                          United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).